JOHN R. REAM, County Treasurer of Lucas County, v. J. A. BROWN, Appellee.

**Taxation:** ASSESSMENT OF OMITTED PROPERTY: DEFAULT: VACATION: APPEAL. Where a county treasurer has listed alleged omitted property for taxation, and on the day set for hearing and before any steps have been taken to enforce payment of the tax he

becomes convinced that the assessment is erroneous, or is informed that the taxpayer is present before him desiring to show cause why the listing and assessment should not be made, he may, even after entry of default, reopen the matter for further hearing. And where the treasurer, as in this case, had gone through the form of entering default, but the taxpayer shortly afterward appeared and offered his objections to the assessment, which were received, filed and considered, the proceeding amounted to a reopening of the matter; and the action of the treasurer in thereafter affirming the assessment constituted a finding from which the taxpayer was entitled to appeal.

*Appeal from Lucas District Court.*—HON. D. M. ANDERSON, Judge.

THURSDAY, DECEMBER 14, 1911.

THE opinion states the case.—*Affirmed.*

*Williams Collinson,* County Attorney, *E. F. Richman* and *Penick & Anderson,* for appellant.

*Stuart & Stuart,* for appellee.

WEAVER, J.—In January, 1910, a so-called "tax ferret" in the employ of Lucas county filed with the county treasurer information to the effect that a large amount of personal property, money, and credits belonging to J. A. Brown, and taxable in said county, had been omitted from the assessment for the years 1905 and to 1909, inclusive. This information specified some two hundred and forty different items of the aggregate valuation for each year of about $450,000. In addition to these items, there was made the further claim of other omitted moneys and credits, not specifically itemized, to the amount of $300,000 for each of said years.

On January 11, 1910, a notice, by registered letter, was sent to Brown, to the effect that the treasurer had

been apprised that property belonging to him and liable for taxation for the years named had been omitted from the assessment, and notifying him to appear at the treasurer's office at 10 o'clock a. m. of January 24, 1910, and make his objection, if any he had, to the listing of such omitted property by the treasurer. The notice did not specify or describe the alleged omitted property which it was proposed to list, but stated the gross value for each year upon which it was proposed to place a tax.

On January 17, 1910, Brown appeared before the treasurer and demanded an itemized statement of the property claimed to have been omitted from assessment, but was given only a list of aggregates for each of the years in question, without itemization or specification of the particular property alleged to have been omitted.

On the morning of January 24, 1910, and before 10 o'clock, Brown went before the treasurer, and, insisting that he was not liable for the tax claimed, asked for further time to make a showing in support of his defense. Concerning what occurred thereafter during that day there is some dispute and uncertainty, and particularly as to the hour or time of the successive steps taken by both parties. The following, however, is reasonably clear: The treasurer was not willing to consent to a postponement to another day, and Brown went out of the office with the expressed purpose of obtaining an attorney and making resistance to the assessment. He did not get back until about 11 or 12 o'clock; the exact time being in dispute. It is now claimed by the treasurer that at 11 o'clock some sort of "default" was entered up against Brown, and tax assessed as demanded by the ferret, who, it would seem, was allowed to perform this part of the treasurer's duties. Within a few minutes thereafter Brown appeared with counsel, and with formal written objections to the proposed assessment, which he wished to file, and asked that time be given to prepare for trial. Neither the treasurer nor the ferret informed

them that a default had already been entered. The treasurer's own testimony in this regard we quote from the record as follows:

Why, Mr. Stuart appeared on that day. That was about 12 o'clock, and he came in, and I made the remark it was little late for objections, but I said personally, myself, that I was willing that Mr. Brown should have a fair chance; that it made no difference to me. Personally, I was willing that Mr. Brown should have a fair trial and a fair chance in the matter, and that he should make his objections; and he made his objections, and I accepted them, and told him that I would file them, which I did. I remarked to him, in substance, that the parties will have to fight out this matter in court, and I thought I would have to make the assessment, and told him, after reading the objections, that I would make the assessment anyway. I would have to make the assessment anyway. I believe I said that Mr. Brown could fight the matter out in court. I believe that I said that. No; I didn't inform Mr. Stuart at the time that I had entered up a default.

Thereafter, on the same day, Brown was notified by registered letter that he had been assessed for the payment of omitted taxes to the amount of $54,500.77, and from this assessment and taxation he appealed to the district court on January 27, 1910. On the following day (January 28, 1910), the treasurer signed a record or written statement, prepared for him by the ferret, as follows:

Additional Finding of Treasurer. In this case, it appearing that the said J. A. Brown, by his attorneys, Stuart & Stuart, did, on the 24th day of January, 1910, at 12 o'clock noon of said day, file an answer or objections in response to the notice from the treasurer, which notice stated that the time of hearing objections to the proposed listing and assessment of omitted property to the said J. A. Brown was 10 o'clock a. m. of said 24th day of January, 1910, and thereafter, to wit, on the 27th day of January, 1910, the said J. A. Brown, by Stuart & Stuart, filed an additional answer or objections to the listing and assessment of omitted property to the said J. A. Brown,

in both of which said answers or objections the said J. A. Brown objects to the listing and assessment of any property to him, omitted for the years 1905, 1906, 1907, 1908, and 1909. Now, on this 28th day of January, 1910, the said treasurer, having duly considered said answers or objections, finds that the same are insufficient, and would have been insufficient, even had they been filed before default, and before assessment was made. That, had they been filed in time to consider before default was entered and assessment made, they would have been and are now overruled, and the treasurer now finds that the assessment, as made by him on January 24, 1910, against the said J. A. Brown, for property omitted from assessment for the years 1905, 1906, 1907, 1908, and 1909, is in due form of law and regular and herewith refuses to change the said assessment on the showing made in the answer or objections filed in this case January 24, 1910, at 12 o'clock noon, and on January 27, 1910, respectively, or either of them. (Signed) J. P. Ream, County Treasurer.

The appeal being docketed in the district court, the treasurer filed a transcript of the proceedings had before him, and moved that the assessment so made and reported ꜱ confirmed, on the ground that no objections thereto had en made or filed in proper time by Brown; and that there as therefore no issue to be tried, and the court was with-ꞇt jurisdiction to consider objections thereafter made.
ꞓreupon Brown moved to require the treasurer to file an amended transcript, showing material matters alleged to have been omitted from his first transcript. The record seems to indicate that at this stage of the proceedings evidence was heard and the treasurer sworn and examined as to the proceedings before him, and the showing thus made was treated as in the nature of an amended transcript. On the showing thus made, the motion to affirm the assessment was overruled, and the cause was ordered set down for trial on its merits. From this order the treasurer appeals.

The ruling of the trial court is too manifestly right

to justify us in any extended discussion of the case. On the appellant's own showing that when Brown appeared with his counsel, shortly after the hour fixed in the notice, they were told that, while they were a little late, the treasurer was willing they should have a fair trial, and thereupon permitted them to file their objections to the proposed assessment, the so-called "default," if any, had been entered, was opened up, and the objections were just as effective as if they had been filed before the hour of 10.

If a treasurer has listed alleged omitted property, and on the same day, and before any steps are taken for its collection, he becomes convinced that the entry is a mistake, or he ascertains that the party so charged is present before him, desiring in good faith to show cause against such listing, we find no reason in the statute or in general principles of right and fair dealing for denying his authority to reopen the matter for further hearing and consideration. In any event, this, in substance, is just what appellant did do. He did not disclose to Brown or his counsel that he had gone through a form of entering a default, but gave them to understand that, while, perhaps, they were a little tardy in appearing, he did not propose to insist upon the objections, but was ready to receive the same and give them fair consideration. He did receive, file, and consider them, and thereupon announced that he would have to make the assessment as demanded by the ferret. If this is not a finding and assessment from which an appeal will lie, it will be difficult to frame one. The record so made discloses the claim made by the ferret and treasurer, the answer thereto by the party sought to be charged, and the decision, overruling the objections, and declaring the property subject to assessment. This is all which can be done in any case of contested assessment of omitted property, and if the property owner may not appeal therefrom the statute allowing appeals may as well be abrogated. To permit that right to be defeated by a concealed "default," entered

between the appearance of the taxpayer in the morning and his appearance an hour later with his counsel, armed with formal answer and objections, which are received and filed with the assurance of a fair trial, would be too gross a perversion of justice to receive the approval of any court.

The appellee is sought to be charged with the payment of a sum amounting to a very respectable fortune, on the theory that he has evaded taxation. He joins issue on the claim, and asks a hearing. To this he is entitled. We know nothing of the merits of the controversy. The demand may be entirely just; it may be just in part only; and it may be wholly unjust. The order appealed from does no more than to open the door of the court for the trial and determination of the fact. Indeed, if it were necessary for us to go into that question, we should be compelled to find from the record that the so-called default was not in fact entered, and no tax against the appellee on omitted property was in fact placed upon the treasurer's books until after appellee had appeared with his counsel and made formal objection to the listing; but we do not care to further review the facts. Enough has been shown to disclose an assessment, or listing, from which an appeal is provided, and that appellee did appeal in due season, thus bringing the case to the district court for disposition upon its merits, and this is all that is required to insure the property owner a hearing.

As the question of the appealable character of the trial court's order, refusing to confirm the assessment, and setting the case down for trial, has not been raised, we do not discuss or decide it.

The rulings complained of were right, and they are *affirmed.*